WOODWARD ET AL. VS. ROANE.

A right of possession of property depending merely upon the statute or municipal regulations of one State, will not, from comity, be recognized in another State when the effect will be to divest rights from its own citizens, or inflict injuries upon them.

*Appeal from Jefferson Circuit Court.*

Hon. JOHN C. MURRAY, Circuit Judge.

YELL, for the appellants, contended that the plaintiffs having a lien upon the slaves in Mississippi, or a right to their possession, under the statute law of that State, had the same right in this State.

WATKINS & GALLAGHER, for appellee.

Admitting that plaintiffs really had complete and full title to the slaves, yet it was only by virtue of a statutory conveyance (not a voluntary one on the part of the owner), and which operated only on the property whilst it was within the limits of Mississippi. (*Story's Con. Lex.*, sec. 411.) Outside of that State it was a dead letter. Such a conveyance, by act of law, could only be recognized here by the inter-comity of States; but Mrs. Roane being a purchaser in good faith, she must hold the property, because the rule in such cases is: " that neither justice nor comity demands that the foreign law should be recognized to the extent of divesting the titles of our own citizens fairly acquired." *Hoyt vs. Thompson*, 19 *N. Y. Rep.* (5 *Smith*) 226; 12 *Barb.* 631; 18 *Geo.* 554; 6 *Pick.* 286; 14 *Ark.* 370.

Mr. Justice FAIRCHILD delivered the opinion of the court.

This suit, an action of replevin, by William Woodward and Seymour Taylor, against Julia Roane, to recover certain negroes, which had been the property of Charles Ratcliff, in Amite county, Mississippi, is connected with *Huff vs. Roane*, 22 *Ark.* 184, in which this court held that the deed of trust, made by Charles Ratcliff, on the 13th of April, 1854, conveying certain slaves to Reuben L. Huff to secure a debt to Woodward and Taylor, administrators of Joicy B. Ratcliff, was fraudulent, being made with an intent to defraud Ratcliff's creditors, and that by the acknowledgment of, and provision for a debt that had no existence. Having then decided that Woodward and Taylor obtained letters of administration upon the estate of

their mother-in-law, the wife of Charles Ratcliff, a married woman with no separate estate, for the sole purpose of making up a false account against Charles Ratcliff to enable him to put his own slaves beyond the reach of his creditors, that deed of trust cannot be the foundation of any suit prosecuted by the trustee, as was the case in *Huff vs. Roane*, or by Woodward and Taylor, its alleged beneficiaries.

If, therefore, this suit was sought to be upheld by the deed of trust, a simple reference to the case of *Huff vs. Roane* would perpetuate its defeat by an affirmance here of the judgment rendered for the defendant in the Circuit Court. But this case is now presented as a prosecution in behalf of the creditors of Charles Ratcliff in this way: The creditors, not regarding the deed of trust as a bar to the recovery of their debts out of the property conveyed, procured the slaves mentioned in the deed of trust to be levied upon, when Woodward and Taylor made claim to the property as belonging to them by virtue of the deed of trust. Having given security to make their claim good at the next term of the Circuit Court of Amite county, the sheriff took the bond of Woodward and Taylor, instead of the slaves levied upon, the parties to the bond being required by it, or by the statute of the State, to sustain their claim on a trial of the right of property before the court, or, in event of failure, to surrender the slaves to the execution, or to have judgment entered against them for their value. At the trial, the slaves were found to be subject to the executions, but in the meantime, though by the law of Mississippi the slaves, when released from the levy by the sheriff, were constructively in the possession of the principals of the bond, they were actually never removed from the possession of Charles Ratcliff, and the night of the day that the slaves were found to be subject to the executions, instead of being sheltered therefrom by the fraudulent transactions between Ratcliff, Huff, Woodward and Taylor, they were run from the county, and in a short time some of them were brought to Jefferson county and sold to the defendant.

Woodward and Taylor having no claim under the deed of

trust to be respected, the only mode of supporting this suit is to maintain that the right of possession of the negroes vested in them by the statutory proceeding by which the negroes were released from the executions levied upon them. Until the trial of the right of the property before the Circuit Court, and till the adverse judgment rendered against the claimants at that trial, it may be conceded, from the proof in the record, that Woodward and Taylor had the right to the possession of the negroes against any claim that could be made upon them in Mississippi. And waiving the question whether the judgment of the court declaring the negroes to be subject to the executions against Charles Ratcliff divested that right, or left it undisturbed in Woodward and Taylor, but subject to an obligation to bring the negroes forward and surrender them to the sheriff to be applied to the executions, we may proceed to solve the question whether the statutory right of possession that was vested in Woodward and Taylor can be recognized in the courts of this State so as to divest an adverse title of one of our own citizens acquired in good faith.

It is evident that the claim of Woodward and Taylor rests upon the right of possession that the statute of Mississippi annexes to the execution of such a bond as they gave to the sheriff, for they had no other claim but that made under the deed of trust, which was overruled in the Circuit Court upon the trial of the right of property, and which *Huff vs. Roane* would prevent us from recognizing. This right of possession in Mississippi was conferred upon Woodward and Taylor by the mere operation of the statute of Mississippi, and can have no more extended effect than judgments *in rem*, or the involuntary conveyances by which assignees are invested with the estates of insolvents or bankrupts. And the rule is, that such legal proceedings and involuntary assignments have effect only in the territory where the laws authorizing them are in force. *Merrick vs. Avery*, 14 *Ark.* 388; *Story on Conflict of Laws, secs.* 411, 414.

It therefore does not follow, as argued by the counsel of

Woodward and Taylor, that the right to the possession of the slaves sued for will prevail here if it would prevail in Mississippi. For the right depending upon a mere statute of Mississippi, has no force elsewhere. The municipal regulations of that State cannot confer any right in this State. *Milne vs. Moreton*, 6 *Bin.* 365; *Hoyt vs. Thompson*, 19 *N. Y. R.* 224.

Often, a right depending upon the statute or municipal regulation of one State, from comity, will be recognized in another State, but not when the effect will be to divest rights from its own citizens, or inflict injuries upon them. *Holmes vs. Remson*, 20 *John.* 261; *Martin vs. Hill*, 12 *Barb.* 633. "The municipal laws of a country have no force beyond its territorial limits, and where another government permits them to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so, care must be taken that no injury is inflicted on her own citizens, otherwise justice would be sacrificed to courtesy, nor can the foreigner or stranger complain of this." *Oliver vs. Townes*, 2 *Mart. N. S.* 98.

Viewing this suit in the most favorable light, it is to enforce a mere statutory right of Mississippi to save the plaintiffs from a responsibility taken upon themselves under the laws of their own State, with the necessary effect of inflicting an injury upon a citizen of this State. Comity does not require us to sacrifice the rights of the defendant to afford protection to the plaintiffs against the consequences of their own acts.

This is the only question that legitimately arises upon the record, and the judgment of the court below being for the defendant, it is right upon the whole record, and we affirm it without regard to the correctness of the rulings of the court in giving and refusing instructions asked by the parties, in giving instructions upon its own suggestion, and in refusing a new trial on account of such instructions.